UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL L.,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

Case No. C18-5842JLR

ORDER AFFIRMING DENIAL OF BENEFITS

## I.   INTRODUCTION

Plaintiff Michael L. seeks review of the denial of his application for disability insurance benefits. (*See* Compl. (Dkt. # 3).) Plaintiff contends that the Administrative Law Judge ("ALJ") erred by (1) failing to find Plaintiff's seizure disorder a severe impairment at step two of the disability evaluation process, (2) failing to properly evaluate Plaintiff's symptom testimony, (3) failing to properly evaluate the medical evidence, and (4) failing to properly evaluate the lay witness statements of Plaintiff's mother. (Pl. Op. Br. (Dkt. # 13) at 1-2.) As discussed below, the court AFFIRMS the Commissioner's decision and DISMISSES this case with prejudice.

//

ORDER - 1

## II. BACKGROUND

**A. Procedural History**

This is the second time this case is before the court. Plaintiff filed an application for disability benefits on May 29, 2012, alleging that his disability began in March 2002. (*See* Admin. Record ("AR") (Dkt. # 7) at 155-61.) Plaintiff later amended his alleged disability onset date to December 30, 2010. (*Id.* at 38.) Plaintiff alleged that he was disabled due to severe headaches and neurologic impairments stemming from an epidural hematoma he suffered in March 2002. (*See id.* at 77, 383.)

Plaintiff's claims were denied on initial review and on reconsideration. (*Id.* at 67-89.) ALJ John Rolph conducted a hearing on Plaintiff's claims on March 31, 2014. (*Id.* at 33-65.) On April 25, 2014, ALJ Rolph issued a decision denying Plaintiff benefits. (*Id.* at 17-27.) The Appeals Council denied review. (*Id.* at 1-3.)

On July 28, 2016, U.S. Magistrate Judge David Christel issued a decision reversing ALJ Rolph's decision and remanding the matter for further proceedings. (*Id.* at 534-44.) Magistrate Judge Christel held that the ALJ had failed to fully develop the record because the impartial medical expert who testified at the hearing, James Haynes, M.D., opined that Plaintiff needed a neurological evaluation to determine his status. (*Id.* at 536-40.) Magistrate Judge Christel further held that the ALJ had failed to give adequate reasons to reject Plaintiff's mother's lay witness statements. (*Id.* at 540-42.) Finally, Magistrate Judge Christel held that because the ALJ erred in failing to fully develop the record, the ALJ's decision to discount Plaintiff's testimony at least in part

based on the medical evidence must be reconsidered. (*Id.* at 542-43.)

On remand, ALJ Rudolph Murgo conducted a hearing at which Plaintiff and a vocational expert testified. (*Id.* at 494-506.) On August 2, 2017, ALJ Murgo issued a decision again denying Plaintiff disability benefits. (*Id.* at 469-86.) ALJ Murgo determined that Plaintiff last met the insured status requirements of the Social Security Act (the "Act") on December 31, 2013. (*Id.* at 472.)

**B.     The ALJ's Decision**

Utilizing the five-step disability evaluation process, 20 C.F.R. § 404.1520, ALJ Murgo found:

> **Step one:** Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of December 30, 2010, through his date last insured of December 31, 2013. *See* 20 C.F.R. §§ 404.1571-76.
>
> **Step two:** Through the date last insured, Plaintiff had the following severe impairments: Status post head trauma and posterior craniotomy with residual headaches, hand tremor, and cognitive disorder not otherwise specified. *See* 20 C.F.R. § 404.1520(c).
>
> **Step three:** Through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526
>
> **Residual Functional Capacity ("RFC"):** Through the date last insured, Plaintiff could perform the full range of work at all exertional levels, but with limitations. He should avoid exposure to industrial chemicals, irregular or unprotected surfaces, heights, hazards, and heavy equipment. He cannot climb ladders, ropes, and scaffolds. He cannot drive motor vehicles. He is limited to simple, routine tasks, and special vocational preparation ("SVP") level one or two type tasks.
>
> **Step four:** Through the date last insured, Plaintiff could not perform any past relevant work. *See* 20 C.F.R. § 404.1565.

> **Step five:** Through the date last insured, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could have performed. *See* 20 C.F.R. §§ 404.1569, 404.1569(a).

(AR at 469-86.) Based on these findings, ALJ Murgo found that Plaintiff had not been under a disability, as defined in the Act, from the alleged onset date of December 30, 2010, through the date last insured, December 31, 2013. (*Id.* at 486.)

Plaintiff filed written exceptions to the ALJ's decision. (*Id.* at 460-65.) The Appeals Council determined that Plaintiff's written exceptions "d[id] not . . . provide a basis for changing the [ALJ's] decision." (*Id.* at 453.) The Appeals Council accordingly declined jurisdiction on May 24, 2018. (*Id.* at 452-55.)

## III. DISCUSSION

Plaintiff bears the burden of proving he is disabled within the meaning of the Act. *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). Pursuant to 42 U.S.C. § 405(g), the court may only set aside a denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the court is required to examine the entire record, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The court briefly notes that Plaintiff raised arguments on law of the case and rule

of mandate in his reply brief.  (*See* Pl. Reply Br. (Dkt. # 17) at 2-5.)  These arguments do not clearly relate to the issues Plaintiff raised in his opening brief, and thus, to the extent they attempt to raise new issues, the court will not consider them.  *See Coleman v. Quakers Oats Co.*, 232 F.3d 1271, 1289 n.4 (9th Cir. 2000) ("[I]ssues cannot be raised for the first time in a reply brief.") (citing *Alaska Ctr. for Env't v. U.S. Forest Serv.*, 189 F.3d 851, 858 n.4 (9th Cir. 1999)).

### A. The ALJ Did Not Harmfully Err in Finding that Plaintiff's Seizure Disorder Was Not a Severe Impairment

Plaintiff argues that the ALJ erred at step two in finding that Plaintiff's seizure disorder was not a severe impairment.  (Pl. Op. Br. at 6-7.)  The court disagrees.

The step two analysis is a gatekeeping device used to screen out weak claims.  *See Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146-47 (1987)).  At step two, the ALJ must determine if the claimant suffers from any impairments that are "severe."  20 C.F.R. § 404.1520(a)(4)(ii).  "An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's work.'"  *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)).  But Plaintiff retains the burden of proof at step two, and must present evidence showing that he suffers from an impairment that has more than a minimal effect on his work.  *See Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

ALJ Murgo found that Plaintiff's alleged seizure disorder was not severe for several reasons.  (AR at 473.)  First, the ALJ noted that "[r]ecords from the relevant

period [the alleged onset date to the date last insured] do not reflect any complaint of seizures or seizure like [sic] spells." (*Id.*) Second, Plaintiff underwent two consultative examinations during the relevant period, and did not mention seizures at either exam. (*Id.*) Third, Plaintiff did not mention seizures as a possible impairment in his testimony at the first hearing before ALJ Rolph. (*Id.*)

Plaintiff has failed to show harmful error. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (holding that the party challenging an administrative decision bears the burden of proving harmful error) (citing *Shinseki v. Sanders*, 556 U.S. 396, 407-09 (2009)). The ALJ reasonably interpreted the evidence in concluding that Plaintiff did not suffer from a seizure disorder that interfered with his ability to work during the period from alleged onset to the date last insured. *See Thomas*, 278 F.3d at 954.

Furthermore, ALJ Murgo found that Plaintiff had other severe impairments, and thus continued on with the disability evaluation. (*See* AR at 472.) Plaintiff nonetheless argues that the ALJ's failure to consider his seizure disorder severe was harmful because his seizures meant he should not climb ladders, scaffolds, and ramps due to his seizures. (*See* Pl. Op. Br. at 7.) Plaintiff's argument fails, though, because the RFC ALJ Murgo formulated states that Plaintiff "cannot climb ladders, ropes, and scaffolds." (AR at 475.) The fact that the ALJ did not consider Plaintiff's seizure disorder severe at step two was thus inconsequential to the outcome because the ALJ included the alleged limitations from that disorder in the RFC. *See Buck*, 869 F.3d at 1048-49 (noting that the RFC "should be exactly the same regardless of whether certain impairments are considered

'severe' or not" because that the step two inquiry "is not meant to identify the impairments that should be taken into account when determining the RFC"). Therefore, any error in failing to consider Plaintiff's alleged seizure disorder severe at step two was harmless.

**B.     The ALJ Did Not Harmfully Err in Discounting Plaintiff's Testimony**

Plaintiff argues that the ALJ erred in discounting Plaintiff's symptom testimony. (Pl. Op. Br. at 7-9.)  The court disagrees.

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).  The ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "'could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)).  At this stage, the claimant need only show that the impairment could have caused some degree of his symptoms; he does not have to show that the impairment could reasonably be expected to cause the severity of the symptoms alleged.  *Id.*  The ALJ found that Plaintiff met this step.  (AR at 476.)

If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony "'by offering specific, clear and convincing reasons for doing so.  This is not an easy requirement to meet.'"  *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014-15).  In evaluating the ALJ's determination at this step, the court may not substitute its judgment for that of the ALJ.  *Fair v. Bowen*, 885

F.2d 597, 604 (9th Cir. 1989). As long as the ALJ's decision is supported by substantial evidence, it should stand, even if some of the ALJ's reasons for discrediting a claimant's testimony fail. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

ALJ Murgo, finding no evidence of malingering, rejected discounted Plaintiff's symptom testimony because it was "not entirely consistent with the medical evidence and other evidence in the record." (AR at 476.) ALJ Murgo reasoned that Plaintiff's testimony was inconsistent with the overall medical evidence, including Plaintiff's lack of treatment during the period between his alleged disability onset date and date last insured, and contradicted by Plaintiff's daily activities. (*Id.* at 476-80.)

The ALJ's first reason for discounting Plaintiff's testimony is questionable, particularly his criticizing Plaintiff for failing to seek "low-cost or free medical treatment" when he lacked medical insurance, but the ALJ's second reason is clear and convincing. An ALJ may discount a claimant's testimony if his daily activities "contradict [the claimant's] other testimony." *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). As ALJ Murgo noted, Plaintiff was the primary caregiver for four young children, including an infant. (AR at 479.) Plaintiff reported that he homeschooled the children, was able to drive, did the family's grocery shopping, and cooked dinner every night. (*Id.*) Although Plaintiff attempted to explain this away, claiming, for example, that his eight-year-old took care of his infant, the ALJ reasonably determined that Plaintiff's explanations were implausible. (*See id.*) Caring for four young children is a demanding task, and the ALJ did not err in finding this "highly inconsistent" with

ORDER - 8

Plaintiff's allegations regarding the severity and frequency of his alleged impairments. (*See id.*)

Although the ALJ's analysis of Plaintiff's symptom testimony was not free from error, Plaintiff has failed to show harmful error. *See Ludwig*, 681 F.3d at 1054 (citing *Shinseki*, 556 U.S. at 407-09). The ALJ's determination that Plaintiff's symptom testimony was contradicted by his daily activities survives regardless of any other error the ALJ made in evaluating Plaintiff's testimony, so any error here was harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (noting that an error is harmless "where it is 'inconsequential to the ultimate disability determination'" (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)).

**C.     The ALJ Did Not Harmfully Err in Evaluating the Medical Evidence**

Plaintiff argues that the ALJ erred in evaluating the opinions of treating doctors Lawrence Neville, M.D., and Yanan Shang, M.D. (Pl. Op. Br. at 4-6.) The court disagrees.

1.     <u>The ALJ Did Not Harmfully Err in Discounting Dr. Neville's Opinions</u>

Dr. Neville is a neurologist who treated Plaintiff starting in April 2014. (*See* AR at 724-32, 740-43, 766.) In a letter dated April 27, 2017, Dr. Neville opined that Plaintiff suffered from severe headaches, which Dr. Neville believed resulted from Plaintiff's March 2002 injury. (*Id.* at 766.) Dr. Neville stated that before he began treating them with appropriate medications, Plaintiff's headaches were intractable and chronic, occurring one to two times per week. (*Id.*) Dr. Neville also opined that he diagnosed

Plaintiff with "post-traumatic epilepsy based upon a clinical description of [Plaintiff's] spells with a suspicious EEG." (*Id.*)

ALJ Murgo gave Dr. Neville's opinions little weight. (*Id.* at 484.) The ALJ reasoned that Dr. Neville's opinions were "primarily based on [Plaintiff's] self-reports" because Dr. Neville did not begin treating Plaintiff until after the date last insured, and did not have treatment records to review during the alleged disability period since Plaintiff did not seek or receive any treatment for his headaches during the alleged disability period. (*Id.*) ALJ Murgo further reasoned that Dr. Neville's opinions were inconsistent with Plaintiff's daily activities. (*Id.*)

An ALJ must provide "clear and convincing" reasons to reject the uncontradicted opinion of a treating doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). If the treating doctor's opinions are contradicted, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence in the record" to reject the doctor's opinions. *See Lester*, 81 F.3d at 830-31 (9th Cir. 1996) (citing *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ's reasons for discounting Dr. Neville's opinions meet both standards.

ALJ Murgo's first reason for rejecting Dr. Neville's opinions withstands scrutiny. "If a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154,

1162 (9th Cir. 2014) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)). ALJ Murgo correctly noted that Dr. Neville did not begin treating Plaintiff until after the date last insured. (*See* AR at 484, 724.) The record does not contain any treatment notes from the alleged disability period, December 30, 2010, to December 31, 2013. (*See id.* at 484.) And Dr. Neville himself noted that he did not have access to Plaintiff's earlier neurology treatment notes. (*Id.* at 766.) ALJ Murgo thus reasonably determined that Dr. Neville based his opinions regarding Plaintiff's condition during the alleged disability period on Plaintiff's self-reports rather than clinical evidence. (*Id.*) Consequently, because the ALJ reasonably discounted Plaintiff's testimony, *see supra* Part III.B., the ALJ reasonably rejected Dr. Neville's opinions for being too heavily based on Plaintiff's self-reports, *see Ghanim*, 763 F.3d at 1162.

The ALJ's second reason for rejecting Dr. Neville's opinions also withstands scrutiny. A material inconsistency between a doctor's opinion and a claimant's activities can furnish a specific, legitimate (and, in this case, clear and convincing) reason for rejecting the treating physician's opinion. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (upholding ALJ's decision to discredit treating physician where his opinions were "inconsistent with the level of activity that [plaintiff] engaged in"). Plaintiff's daily activities—particularly his caregiving and homeschooling of his young children—were highly inconsistent with claims of frequent debilitating headaches. *See supra* Part III.B. The ALJ did not err in rejecting Dr. Neville's opinions on this basis.

In sum, the ALJ gave two reasons for rejecting Dr. Neville's opinions, and both

survive review. The ALJ therefore did not err in rejecting Dr. Neville's opinions.

2. <u>The ALJ Did Not Harmfully Err in Failing to Address Dr. Shang's Opinion</u>

Dr. Shang is a neurologist who treated Plaintiff on two occasions, November 18, 2014, and May 15, 2015. (AR at 732-35.) Dr. Shang did not issue a formal written opinion. (*See id.*) In her treatment notes, Dr. Shang assessed Plaintiff as having "[f]ocal seizure with secondary generalization," and "possible breakthrough seizures." (*Id.* at 733.) Dr. Shang advised Plaintiff to "take seizure precautions including no driving or operating heavy machinery or being in a body of water alone." (*Id.*)

ALJ Murgo did not directly discuss Dr. Shang's opinions. The ALJ noted, however, that "[t]reatment records after [Plaintiff's] date last insured show his providers recommended he not drive, due to his seizure like [sic] spells," and gave those opinions great weight. (*Id.* at 483.) ALJ Murgo accordingly stated in the RFC that Plaintiff "cannot drive motor vehicles" and should avoid heavy equipment. (*Id.* at 475.)

Plaintiff has once again failed to show harmful error. *See Ludwig*, 681 F.3d at 1054. An ALJ should explicitly address all medical opinions, but Dr. Shang's statements in her treatment notes can only be called "opinions" in the broadest sense of the word. *See* 20 C.F.R. § 404.1527(a) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical and mental restrictions."). The only relevant functional limitations Dr. Shang suggested were no driving and avoidance of heavy equipment.

(AR at 733.) The RFC covered these limitations, so any error was harmless. *See Robinson v. Berryhill*, 690 F. App'x 520, 523 (9th Cir. 2017) (applying harmless error analysis where ALJ ignored treating physician's opinion) (citing *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015)).

**D.     The ALJ Did Not Harmfully Err in Rejecting Plaintiff's Mother's Statements**

Plaintiff argues that the ALJ erred in rejecting Plaintiff's mother's statements. (Pl. Op. Br. at 9-10.) The court disagrees.

In determining disability, "'an ALJ must consider lay witness testimony concerning a claimant's ability to work.'" *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)). The ALJ must "give reasons germane to each witness" before he can reject such lay witness evidence. *Molina*, 674 F.3d at 1111 (internal citations and quotation marks omitted). "Further, the reasons 'germane to each witness' must be specific." *Bruce*, 557 F.3d at 1115 (quoting *Stout*, 454 F.3d at 1054).

Plaintiff's mother submitted several written statements regarding Plaintiff's symptoms and limitations. (AR at 212-20, 245-46, 698-700.) Plaintiff's mother stated that Plaintiff had trouble with all physical and mental tasks when he was suffering one of his headaches. (*Id.* at 217-18.) Plaintiff's mother stated that Plaintiff suffered severe seizures about six times in a 12-month period, and minor seizures on a monthly basis. (*Id.* at 245.) Plaintiff's mother stated that Plaintiff suffered severe headaches on a weekly basis that caused vomiting and total body weakness. (*Id.* at 698.)

ALJ Murgo gave these statements little weight. (*Id.* at 484.) The ALJ reasoned that these statements were inconsistent with Plaintiff's own testimony, inconsistent with Plaintiff's activities, and inconsistent with the medical evidence. (*Id.*)

ALJ Murgo did not harmfully err in rejecting Plaintiff's mother's testimony. The ALJ's analysis is not free from error, but he gave at least one valid reason that overrides his errors. *See Molina*, 674 F.3d at 1115. ALJ Murgo reasonably concluded that Plaintiff's mother's testimony was inconsistent with Plaintiff's daily activities. *See Carmickle*, 533 F.3d at 1164 (holding that inconsistency with plaintiff's daily activities is a germane reason to reject lay witness testimony). For example, Plaintiff's mother's statements that Plaintiff suffered frequent seizures was inconsistent with the fact that Plaintiff continued to drive during the alleged disability period. (*See* AR at 215, 245, 484.) ALJ Murgo thus gave a germane reason to reject Plaintiff's mother's statements and did not harmfully err. *See Molina*, 674 F.3d at 1122.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED and this case is DISMISSED with prejudice.

DATED this 25th day of June, 2019.

JAMES L. ROBART
United States District Judge